OPINION OF THE COURT
Irving Fudeman, J.
This is an application by the Coroner of Niagara County requesting that the De Graff Memorial Hospital and its staff, of North Tonawanda, New York, be ordered to turn over the complete medical and hospital records of one John R. Duke, deceased. John R. Duke was a patient in the De Graff Memorial Hospital from January 4, 1983 to January 29,1983, and he was once again hospitalized from January 30,1983 to January 31,1983, during which hospitalization he died. The hospital administrator has resisted the efforts of the Coroner of Niagara County to obtain such records pertaining to said hospitalization of the deceased after the body of the deceased was obtained and an autopsy had already been performed by a qualified medical examiner, Dr. Uku of Erie County. Medical examiner Dr. Uku was employed by the Niagara County Coroner pursuant to section 674 of the County Law. Dr. Uku requires the hospital records of the deceased relative to the two admissions hereinabove referred to, in order to assist in the completion of his analysis and report concerning the cause or means of death of the deceased.
*953 The Coroner of Niagara County served a subpoena duces tecum on the hospital administrator after an informal request for obtaining these hospital records was refused. At some subsequent time, the administrator, on the advice of counsel, apparently refused to turn over the copies referred to herein, on the grounds of the coroner’s lack of power to subpoena records, and allegedly because of the confidentiality of said materials. No motion was ever made by the hospital or the administrator to quash the subpoena duces tecum. It was merely disregarded by the respondents on the erroneous presumption of lack of power of the coroner to subpoena records.
It is the finding of this court that a coroner has the power of subpoena (County Law, § 674, subd 4), which is not restricted to merely asking questions of witnesses. The statutory law applicable and the commentaries referred to in respondent’s brief and other treatises, although distinguishing between “subpoena ad testificandum” and “subpoena duces tecum”, do not indicate that the reference to subpoena necessarily excludes one or the other of these two kinds of subpoena. It is our interpretation that the reference generally, to the power to subpoena in subdivision 4 of section 674 of the County Law, includes the power of subpoena duces tecum.
The power to subpoena may or may not require the production of records or other “portable object[s]” (County Law, § 674, subd 2). But as long as the material sought is required for the full investigation of the “essential facts concerning the death” (County Law, § 674, subd 2) such a production of records should not be restricted by a tortured interpretation of subdivision 4 of section 674 of the County Law.
The authority of the coroner to investigate any “death occurring in a suspicious, unusual or unexplained manner” (County Law, § 673, subd 1, par [c]), is the rationale for the investigation in this case. Such an investigation is not restricted to merely obtaining and examining the body as alluded to in respondent’s brief. The family of the deceased, having knowledge of the coroner’s taking possession of the body in this case, obviously has not objected to the authority of the coroner in this case. Certainly they have not *954 objected to the coroner’s investigation. It would appear, therefore, that the family of the deceased has waived any objections to the medical examiner and Coroner of Niagara County from looking at the hospital records of the decedent.
The cloak and privilege of confidentiality, just as the rights to the body of the deceased, does not belong to the respondent. Unless the respondent wishes to avail itself of its privilege against self incrimination (which of course would refer to criminal culpability only) they have no individual privilege in this case. Of course the record is devoid of any such claim on the part of the respondent here. Therefore the confidentiality argument of respondent is without merit.
The powers and duties of the coroner as set forth in article 17-A of the County Law (especially §§ 671, 673, 674, 675 and 678) would not be consistent with the respondent’s interpretation that “portable object[s]” refer only to portable objects found “in the vicinity of the body” or are restricted to physical items, such as knives, guns, etc., involved in a homicide. By no stretch of the reading of the sections herein can such a conclusion be interpolated. The coroner in the course of his investigation is not restricted by statute with the sole and specific responsibility for viewing and examining the body only. As a matter of fact, a reasonable reading of the article leads to quite the opposite conclusion. The only test being that everything be done to investigate which will reasonably assist in establishing the cause of death or to determine the means or manner of death. It is utterly ridiculous to believe that the intention of the Legislature of this State was to allow coroners and/or their medical examiners to examine bodies and prevent them from using whatever reasonable written materials and records which could assist them to more accurately and definitively accomplish their stated task and duty.